UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY SOLEK, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF EMILY VICTORIA SOLEK,                    Case No. 21-cv-10442
DECEASED, AMY SOLEK and BRENT
SOLEK, INDIVIDUALLY,                        Paul D. Borman
                                            United States District Judge

                    Plaintiffs,

v.

K & B TRANSPORTATION, INC., an
Iowa corporation, BROCK
ACKERMAN, KORY ACKERMAN,
and JOHNNY STEWART,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF NO. 30)

This case arises from a tragic automobile accident that occurred at approximately 9:30 a.m. on Friday, June 19, 2020, which resulted in the death of 21-year-old University of Michigan student Emily Solek when the vehicle she was driving was struck from behind by a semi-truck, crushing her vehicle between the semi-truck and a cargo van in front of her and causing her vehicle to catch fire. Ms. Solek's parents, individually and as the personal representative of the Estate of Emily Solek, have filed this wrongful death suit against the driver of the semi-truck

that struck Ms. Solek's vehicle, as well as his employer/owner of the semi-truck, and two individual officers/owners of the company. Now before the Court is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 30). The motion has been fully briefed, and the Court held a hearing on this motion on Friday, September 10, 2021. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Statement of Facts[1]

According to Plaintiffs' First Amended Complaint, on June 19, 2020, Emily Solek, a 21-year-old student at the University of Michigan, was driving from Ann Arbor to her home in Rochester, Michigan. (ECF No. 21, Plaintiffs' First Amended Complaint (FAC), ¶¶ 8, 74, PageID.353, 362.) While Emily was driving east on Michigan highway M-14, traffic slowed due to an exit closure, and she slowed her vehicle along with other traffic. (*Id.* ¶ 72, PageID.361.) Around that same time, Defendant Johnny Stewart, a truck driver employed by Defendant K&B Transportation, Inc. (K&B), was also driving eastbound on M-14, in a 2013

---

[1] This statement of facts is taken directly from the allegations in Plaintiffs' First Amended Complaint, and these allegations, and all reasonable inferences from them, are presumed true for purposes of deciding this motion to dismiss.

2

Freightliner semi-truck owned by K&B. (*Id.* ¶¶ 70-71, PageID.361.) Stewart failed to keep his semi-truck under control in the slowing traffic and drove at or near full speed into the rear of Emily's vehicle, a 2017 Jeep Grand Cherokee, resulting in Emily's death. (*Id.* ¶ 73, PageID.361.) Emily's vehicle was crushed between the Freightliner and a cargo van ahead of her, and as a result of the collision, both the K&B truck and the Solek vehicle caught fire. (*Id.* ¶ 75, PageID.362.) Plaintiffs allege that the impact "fractured [Emily's] skull, cervical spine, and ribs, amputated her right leg above the knee, and caused severe, permanent, and fatal internal injuries" and that "Emily was consumed by the fire, as she was unable to escape or be retrieved from her burning vehicle." (*Id.* ¶ 76, PageID.362.)

### B.    Procedural History

On February 26, 2021, Emily Solek's parents, Amy Solek and Brent Solek, individually and as personal representative of Emily Solek's Estate, brought this action against four Defendants: (1) Johnny Stewart, the truck driver; (2) K&B Transportation, Inc., the owner of the semi-truck and Stewart's employer; (3) Brock Ackerman, the registered agent of K&B and also its Secretary, Treasurer and Director; and, (4) Kory Ackerman, President and Director of K&B. (ECF No. 1.)

In lieu of an answer, on April 23, 2021, Defendants filed a motion to dismiss Plaintiffs' Complaint, and a motion to strike Plaintiffs' complaint. (ECF Nos. 16,

18.) On May 7, 2021, Plaintiffs responded to the motion to dismiss by filing a First Amended Complaint (ECF No. 21), and they also filed a response to the motion to strike (ECF No. 22). Defendants subsequently withdrew their motion to dismiss and motion to strike. (ECF No. 24.)

Plaintiffs' First Amended Complaint, brought by the same Plaintiffs and against the same Defendants as the original Complaint, contains three counts:

> (1) Count I – Liability of K&B Transportation, Brock Ackerman, Kory Ackerman and Stewart to Plaintiff, the Estate of Emily Victoria Solek, deceased (a negligence claim);
>
> (2) Count II – Liability of K&B Transportation, Brock Ackerman, Kory Ackerman and Stewart to Plaintiffs, Amy and Brent Solek, for Negligent Infliction of Emotional Distress (Bystander Liability); and
>
> (3) Count III – Liability of Brock and Kory Ackerman to Amy and Brent Solek for Intentional Infliction of Emotional Distress.

(FAC.)

On May 21, 2021, Defendants filed the instant Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 30, Defs.' Mot.) Defendants argue that Plaintiffs fail to state a negligence claim against Defendants Brock and Kory Ackerman personally, and have failed to plead facts sufficient to pierce the corporate veil to reach the Ackerman Defendants. Defendants contend that the FAC attributes allegedly tortious conduct against K&B only, not Brock and Kory Ackerman as

individuals. Defendants further argue that Plaintiffs' FAC fails to state a claim for negligent or intentional infliction of emotional distress. Defendants contend that the FAC as a whole should be dismissed with prejudice, or, at a minimum, that the FAC should be narrowed to Count I against only Defendants Stewart and K&B.

Plaintiffs filed a Response in opposition to Defendants' motion to dismiss. (ECF No. 35, Pls.' Resp.) Plaintiffs argue that they have sufficiently alleged that the Ackerman Defendants personally participated in the alleged tortious acts, and that it is premature to address arguments regarding piercing the corporate veil at this stage of the litigation, before any discovery has been conducted. Plaintiffs continue that, in any event, they have sufficiently pleaded allegations that support piercing the corporate veil with respect to the Ackerman Defendants. Plaintiffs further argue that they have sufficiently pleaded claims of negligent and intentional infliction of emotional distress.

Defendants filed a Reply brief in support of their motion to dismiss. (ECF No. 37, Defs.' Reply.) Defendants assert that their motion to dismiss is not "premature," as Plaintiffs allege. Defendants contend that the Ackerman Defendants, as officers and agents of K&B, cannot be held personally liable to Plaintiffs for K&B's business decisions, as a corporation can only act through its agents. Defendants argue that Plaintiffs' negligence claims fails because they have failed to plead any actionable

5

duty owed by the Ackerman Defendants to Plaintiffs, and that Plaintiffs' negligent and intentional infliction of emotional distress claims fail as a matter of law.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id.* at 539 (internal citations and quotation marks

---

[2] Defendants also filed a Motion to Strike Pursuant to Fed. R. Civ. P. 12(f), seeking to strike certain portions of Plaintiffs' First Amended Complaint. (ECF No. 27.) On September 10, 2021, the Court granted in part and denied in part that motion to strike. (ECF No. 39, Order.)

omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are

7

public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

## III.  ANALYSIS

### A.    Whether the FAC States a Negligence Claim Against Defendants Brock and Kory Ackerman

Count I of the FAC alleges a negligence claim on behalf Plaintiff, the Estate of Emily Solek only, and against all Defendants. Defendants seek dismissal of Count I against Brock and Kory Ackerman, arguing that Plaintiffs attempt to circumvent the high hurdle to pierce the corporate veil by pleading that Brock and Kory Ackerman, individually, are directly liable to the Estate as negligent actors. (Defs.'

8

Mot. at p. 9, PageID.901-04.)[3] Defendants contend that Plaintiffs fail to properly

plead a negligence claim against Defendants Brock and Kory Ackerman because

Plaintiffs fail to allege a duty owed to the Estate by the Ackerman Defendants,

---

[3] Plaintiffs assert claims for negligence and negligent infliction of emotional distress against Defendants Brock and Kory Ackerman in their individual capacities (the Ackerman Defendants), as well as against Defendants K&B and Stewart, and a claim for intentional infliction of emotional distress against the Ackerman Defendants only. Defendants initially argue in their motion to dismiss that "in order to assert all three claims against Brock and Kory [Ackerman] in their individual capacities, [Plaintiffs] improperly seek to pierce the corporate veil." (Defs.' Mot. at p. 3, PageID.895.) Defendants contend that Plaintiffs fail to meet their heavy burden of establishing that the corporate veil should be pierced." (*Id.*) However, Plaintiffs state in their Response brief that they want to make it "clear from the outset" that they "do not claim that Brock and Kory Ackerman are mere instrumentalities of K&B (or vice versa)" and that they "are not currently attempting to pierce the corporate veil in the traditional sense to hold the Ackermans personally liable at all." (Pls.' Resp. at pp. 1-2, PageID.1188-89 ("Indeed, Plaintiffs are not currently trying to pierce the corporate veil at all[.]").) Plaintiffs' counsel similarly stated during the hearing on this motion that the Plaintiffs were not currently seeking to pierce the corporate veil, but instead contend that Brock and Kory Ackerman are liable for their own negligent conduct. Accordingly, the Court will not address the piercing-the-corporate-veil issue at this time.

The Court further notes that Plaintiffs argue first in their Response that Defendants' motion to dismiss is premature because discovery has not been conducted, citing Fed. R. Civ. P. 56(b), which governs motions for summary judgment. (Pls.' Resp. at pp. 5-6, PageID.1192-93.) This argument is rejected. Defendants' motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), not Rule 56(b), and was required to be filed "before pleading if a responsive pleading is allowed," and thus necessarily before any discovery could be conducted, and thus is clearly not "premature."

individually, and fail to allege that the Ackerman Defendants breached such a duty, and instead only allege breaches of duty by Defendants Stewart and K&B. (*Id.*)

Plaintiffs respond that Michigan has long held that corporate employees are personally liable for their own torts. (Pls.' Resp. at p. 12, PageID.1199.) Plaintiffs contend that Defendants Brock and Kory Ackerman are personally liable for the tortious acts in which they have actively participated, whether on their own behalf or as agents of K&B. (*Id.*)

Michigan law presumes that the corporate form will be respected. *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Seasword v. Hilti*, 449 Mich. 542, 537 N.W.2d 221, 224 (1995)). "It is well-settled that Michigan courts will respect the separate existence of business entities from their owners. This is true even when a single shareholder or member owns the entity." *Alpha Inv., L.L.C. v. Alpha Real Estate, L.L.C.*, No. 291939, 2010 WL 4977902, at *3 (Mich. Ct. App. Dec. 7, 2010) (citations omitted) (holding that "in the absence of evidence that would warrant disregarding the separate existence of the entities involved, [an incorporator who signed the purchase agreement at issue which stated that he 'was acting on behalf of two entities that had not yet been formed'] could not be individually liable for breaches of those contracts"); *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 797 (E.D. Mich.

2014) ("'Michigan courts typically consider corporations legally distinct from their shareholders, even if a single shareholder owns all the stock.'") (quoting *Department of Consumer Indus. Servs. v. Shah*, 236 Mich. App. 381, 393 (1999)).

However, Michigan courts will disregard the corporate form and hold an officer of a corporation *personally* liable for *his own tortious or criminal acts*, even when that officer was acting for the benefit of the corporation, and for the actions of the corporation where that officer *caused* the corporation to act criminally or tortiously. *See Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 276 Mich. App. 514, 519 (2007). Under Michigan law, "[i]t is well established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation." *In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1985) (emphasis in original); *see also Department of Agric. v. Appletree Mktg., LLC*, 485 Mich. 1, 17 (2010) ("Michigan law has long provided that corporate officials may be held personally liable for their individual tortious acts done in the course of business, regardless of whether they were acting for their personal benefit or the corporation's benefit"). For example, corporate officials have been held individually liable in such instances for their personal actions in committing intentional torts such as conversion of funds or property, making fraudulent representations, sexually harassing an employee, or misappropriation of

11

trade secrets, copyright infringement, and trademark and Lanham Act violations. *See, e.g., Appletree Mktg.*, 485 Mich. at 17 (conversion of funds); *Innovation Ventures, L.L.C. v. Aspen Fitness Products, Inc.*, No. 11-cv-13537, 2015 WL 11071470, at *15 (E.D. Mich. Mar. 31, 2015) (misappropriation, copyright, trademark); *Kheder Homes at Charleston Park, Inc. v. Charleston Park Singh, LLC*, No. 307207, 2014 WL 60326, at *6-7 (Mich. Ct. App. Jan. 2, 2014) (fraud); *Elezovic v. Ford Motor Co.,* 274 Mich. App 1, 13–14 (2007) (sexual harassment). The Michigan Supreme Court has explained that imposition of personal liability in such instances does not require piercing of the corporate veil, but rather derives from the concept that a corporate officers may not escape liability for "their own tortious misconduct" by "hid[ing] behind the corporate form." *Appletree Mktg.*, 485 Mich. at 18-19 (emphasis in original).

In order to state claim for negligence against an individual under Michigan law, Plaintiffs must plausibly allege "(1) duty; (2) breach of that duty; (3) causation, both cause in fact and proximate causation; and (4) damages." *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 894 (E.D. Mich. 2020) (citing *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21 (2009)). Defendants argue that Plaintiffs fail to allege a duty owed to the Estate by Defendants Brock and

Kory Ackerman, individually, or that either of the Ackerman Defendants breached such a duty.

### 1.      Whether Plaintiffs sufficiently allege that Brock and/or Kory Ackerman, individually, owed a duty to the Estate

Plaintiffs broadly plead that *all* Defendants "owed duties of reasonable care to all Plaintiffs, including the duty to comply with all applicable Federal, State and local statutes, regulations and ordinances, as well as industry practices," and that Defendants K&B, Brock Ackerman and Kory Ackerman specifically "owed Plaintiffs a duty to use reasonable care as an interstate transporter, with such duties established by common law, as well as applicable Federal, State and Local statutes, regulations, and ordinances." (FAC ¶¶ 79, 82, PageID.362-63.) Defendants argue that Plaintiffs have failed to properly plead an actionable duty that Defendants Brock and Kory Ackerman, as individuals, owed to the Estate.

"[T]he existence of a duty is a question of law." *Grifo & Co.*, 485 F. Supp. 3d at 894 (citing *Hill v. Sears, Roebuck and Co.*, 492 Mich. 651, 659 (2012)). In making this determination, courts consider "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id.* at 895. Most importantly, "there must be a relationship between the parties and the harm must have been foreseeable." *Id.* (citation omitted); *see also Massey v. Grant*,

13

679 F. Supp. 711, 713 (W.D. Mich. 1988) ("The law will hold defendant liable for his negligent conduct only if, because of his relationship with plaintiffs, he is deemed to owe them, in particular, a duty of due care."), *aff'd*, 875 F.2d 865 (6th Cir. 1989). And, "[a] foundational rule in negligence law is that parties are not held liable for 'passive inaction or the failure to actively protect others.'" *Grifo & Co.*, 485 F. Supp. 3d at 895 (citations omitted).

Defendants argue that Plaintiffs have not sufficiently alleged a breach of any duty by Brock and/or Kory Ackerman owed to the Estate, and instead allege only breaches of duty by K&B and Stewart. Defendants state that Brock and Kory Ackerman are not "interstate transporters," as alleged in paragraph 82 of the FAC. (Defs.' Mot. at p. 10, PageID.902.)[4] Plaintiffs do not address or explain this allegation in their Response brief. As Defendants explain, Plaintiffs allege in their FAC that Brock and Kory Ackerman are employees and officers of K&B. (Defs.' Mot. at p. 10, PageID.902.) (FAC ¶¶ 13-14, 20-21, PageID.353-54.) Plaintiffs further allege that the death of Emily Solek was caused by Defendant Stewart "fail[ing] to stop in the assured clear distance…." (FAC ¶ 1, PageID.351.) (Pls.'

---

[4] The term "interstate transporter" is not defined in the FAC, and does not appear to be a statutory term, but presumably this term is more properly referring to K&B, an interstate trucking transportation company.

Resp. at p. 3, PageID.1190 ("Ms. Solek died from a rear-end accident caused by K&B driver Stewart.").) Defendants argue that Plaintiffs have failed to allege that the Ackerman Defendants, as employees and officers of K&B, individually owed a duty to protect Emily Solek from the allegedly tortious conduct of Stewart or from harm in general. *See Grifo & Co.*, 485 F. Supp. 3d at 895 ("A foundational rule in negligence law is that parties are not held liable for 'passive inaction or the failure to actively protect others from harm.'").

Plaintiffs respond that they do not allege that Brock and Kory Ackerman failed to protect Ms. Solek from Defendant Stewart, and thus they do not need to establish the existence of a "special relationship" with the Ackerman Defendants to establish a duty of care. (Pls.' Resp. at pp. 18-19, PageID.1205-06.) Plaintiffs contend instead that they plead that the Ackerman Defendants owed the Estate a general duty of due care.

However, Plaintiffs fail to allege that the Ackerman Defendants, as individuals, had any relationship with Ms. Solek, and fail to allege any specific conduct by the Ackerman Defendants, individually, directed to Ms. Solek. *See Massey*, 679 F. Supp. at 713 ("The law will hold defendant liable for his negligent conduct only if, because of his relationship with plaintiffs, he is deemed to owe them, *in particular*, a duty of due care.") (emphasis added); *see also Hill*, 492 Mich. at 671

15

(stating that "duty is circumscribed by the bounds of the parties' relationship"). Plaintiffs do not allege that the Ackerman Defendants knew Ms. Solek or that they personally were involved in the June 19, 2020 accident that resulted in her death. Rather, Plaintiffs plead that "[t]he Ackerman Defendants, at all relevant times, were acting during the course of, and within the scope of their employment with KB." (FAC, ¶ 50, PageID.358.) Similarly, in their Response brief, Plaintiffs argue that the Ackerman Defendants' duty "arises from the undertaking of running a trucking company that operates on the highway." (Pls.' Resp. at p. 18, PageID.1205.)

Plaintiffs' attempt to impose liability for a negligence claim against the Ackerman Defendants individually, as employees and officers of K&B, not for their alleged involvement in the accident, but rather for their general alleged business decisions involved with "running" the Company in this case, would eliminate the benefit of the corporate form. As Defendants correctly explain, it is well-established that "a corporation acts through its agents." *Edmonds v. Fehler & Feinauer Constr. Co.*, 252 F.2d 639, 642 (6th Cir. 1958); *see also Altobelli v. Hartmann*, 499 Mich. 284, 297 (2016) (same). "The mere fact that a corporation … commits a tort, does not mean that the individual shareholders of the corporation should personally be liable. To the contrary, the corporate form of doing business is typically selected precisely so that the individual shareholders will not be liable." *Stramaglia v. United*

16

*States*, No. 06-13764, 2007 WL 4404185, *3 (E.D. Mich. Dec. 13, 2007). Plaintiffs

have failed to allege that the Ackerman Defendants had any relationship with Ms.

Solek that would support the existence of a duty owed to her in this case.

Plaintiffs also seek to base the existence of a duty on Michigan's adoption of

the Federal Motor Carrier Safety Regulations (FMCSR), as part of the Michigan

Motor Carrier Safety Act (MCSA), Mich. Comp. Laws § 400.11, *et seq.* (Pls.' Resp.

at pp. 14-16, PageID.1201-03.) However, Plaintiffs fail to establish that this statute

creates a duty owed by the Ackerman Defendants, as individuals, to Ms. Solek.[5]

Plaintiffs rely on *Tingle v. Cornelison*, No. 3:15-cv-00319-RGJ, 2018 WL 6594544

(W.D. Ky. Dec. 14, 2018) in support of their argument. (Pls.' Resp. at p. 15,

PageID.1202.) However, that case does not support Plaintiffs' argument that the

Ackerman Defendants owed a duty to Plaintiffs. In fact, in *Tingle*, the parties did not

dispute that defendant Ernest Cornelison, the defendant truck driver in that case,

owed a duty of care to the plaintiff while driving his truck. *Tingle*, 2018 WL

---

[5] Although a duty of care can be established through a statute, "the fact that defendant's conduct may have been in violation of a statute does not in and of itself shed light on whether defendant owed plaintiff a duty of care." *Cipri v. Bellingham Frozen Foods, Inc.*, 235 Mich. App. 1, 16 (1999). Plaintiffs here have presented no caselaw establishing a duty of care under the facts of this case, and "[i]t is Plaintiff's responsibility to establish the existence of a duty by which Defendant may be held liable for negligence." *Grifo & Co.*, 485 F. Supp. 3d at 900 (collecting cases).

6594544, at *2. They instead disagreed about the appropriate standard of care by which to measure Cornelison's actions. *Id.* at *2-3. Plaintiffs here have failed to establish that the FMCSR established a duty between the Ackerman Defendants, individually as owners and officers of K&B, and Ms. Solek.

Because Plaintiffs fail to plead any legally recognized duty owed by the Ackerman Defendants, personally and individually, to the Estate, Count I of the FAC is dismissed without prejudice against Defendants Brock and Kory Ackerman.

### 2. Whether Plaintiffs sufficiently allege that the Ackerman Defendants breached a duty to the Estate

Defendants further argue that Plaintiffs fail to allege any conduct by the Ackerman Defendants, in their individual and personal capacities, that breached any duty owed to the Estate. In support of their negligence claim, Plaintiffs allege breaches in every instance by "K & B Transportation and the Ackerman Defendants" collectively, directed to the company's business practices and decisions. (See FAC ¶ 83, PageID.364-65 (alleging, *e.g.*, negligent hiring and entrustment, failure to screen, monitor, and test drivers, failure to implement safety policies and procedures, failure to provide safety and defensive driving training, failure to equip vehicles with appropriate safety devices, etc.).) These are all allegations related to K&B and the operation of the Company, and Plaintiffs do not plead in Count I any alleged

18

individual breaches by the Ackerman Defendants that were not attributable to the operation of the Company. Indeed, in their Response brief, Plaintiffs again state that they are seeking to hold the Ackerman Defendants personally liable for acts committed "as the decision-makers for K&B" and "while working for K&B." (Pls.' Resp. at p. 19, PageID.1206.)

The Court finds that Plaintiffs fail to plead that the Ackerman Defendants, as individual defendants, breached any duty owed to the Estate. Accordingly, for this additional reason, Count I is dismissed, without prejudice, against Defendants Brock and Kory Ackerman only. Count I may proceed against Defendants Stewart and K&B.

## B.    Count II – Negligent Infliction of Emotional Distress

Defendants argue that Plaintiffs' claim for negligent infliction of emotional distress, also referred to as bystander liability, alleged against all Defendants, fails to state a claim upon which relief can be granted. (Defs.' Mot. at pp. 12-19, PageID.905-11.)[6] Under Michigan law, the elements of a negligent infliction of emotional distress claim are:

---

[6] Plaintiffs assert their negligent infliction of emotional distress claim against all Defendants, including Brock and Kory Ackerman, individually. (FAC, Count II, PageID.365.) Plaintiffs allege that "K & B Transportation, Brock Ackerman, Kory Ackerman, and Stewart owed to the general public, including Plaintiffs Amy and

(1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not presence, at least shock "fairly contemporaneous" with the accident.

*Hesse v. Ashland Oil, Inc.*, 466 Mich. 21, 34 (2002) (citing *Wargelin v. Sisters of Mercy Health Corp.*, 149 Mich. App. 75, 81 (1986)); *see also House of Providence v. Meyers*, 458 F. Supp. 3d 621, 641 (E.D. Mich. 2020) (citing *Taylor v. Kurapati*, 236 Mich. App. 315 (1999)). Defendants argue that Plaintiffs fail to sufficiently plead elements two and four of their negligent infliction of emotional distress claim.

### 1.   Whether the Soleks suffered shock "fairly contemporaneous" with the accident

Defendants first argue that Plaintiffs have failed to sufficiently plead the fourth prong of their negligent infliction of emotional distress claim – that the Soleks were present at the time of the accident or that they suffered shock "fairly

---

Brent Solek, the duty to exercise reasonable care in their conduct, so as to prevent emotional injury to innocent bystanders who are immediate family relatives of the deceased." (*Id*. ¶ 86, PageID.365.) For the reasons discussed *supra* as to why Plaintiffs' general negligence claim against Brock and Kory Ackerman, individually fails – namely, failure to allege a duty owed by these individual defendants to Plaintiffs – their negligent infliction of emotional distress claim against these two defendants, individually, fails, and this claim is dismissed as to Brock and Kory Ackerman only.

20

contemporaneous" with the accident. (Defs.' Mot. at pp. 13-17, PageID.905-09.) As explained above, under Michigan law, a plaintiff may recover for negligent infliction of emotional distress only if the plaintiff is "present at the time of the accident or suffers shock 'fairly contemporaneous' with the accident." *House of Providence*, 458 F. Supp. 3d at 641; *Gustafson v. Faris*, 67 Mich. App. 363, 368-69 (1976). Michigan has refused "to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. The Detroit News*, 200 Mich. App. 622, 629 (1993) (emphasis added).

In this case, Plaintiffs' FAC alleges:

89. Amy and Brent Solek first suspected that their daughter was injured in a collision when they were alerted by the tracking features on their cell phones that she was no longer driving towards home on M-14.

90. Amy and Brent Solek began driving towards the crash scene from their home in Rochester Hills.

91. Shortly thereafter, they were confronted by a large back-up in traffic that had occurred on SB I-275 as a consequence of the crash.

92. On the way to the scene, Amy frantically called area hospitals, seeking information on the admission of her daughter to a local facility.

93. Amy and Brent Solek also reached out to members of the State Police, to determine if their daughter had been involved in the crash. They were told that a crash had occurred.

21

94. When they arrived at the scene, Amy and Brent saw the burning vehicles and identified the charred and crushed remains of the Grand Cherokee Jeep they recognized as the one Emily was driving. They also saw the overturned other vehicles and the smashed KB Freightliner.

95. When the investigating officers recognized Amy and Brent for who they were – the parents of the driver of the Jeep – they directed Amy and Brent first to the side of the road, and then instructed them to return home to wait for more information.

96. Amy and Brent Solek, in shock, waited first at the scene and then drove to their home in Rochester Hills, Michigan. Before returning home, they stopped at their church, seeking solace and comfort.

97. Later that evening, Amy and Brent were visited by the assigned and investigating officers who advised them that their daughter had not survived.

(FAC ¶¶ 89-97, PageID.366.)

Plaintiffs do not plead that they were present at the instant of the accident. Thus, the issue is whether they have sufficiently pleaded that they suffered shock "fairly contemporaneous" with the accident. With respect to the standard to be used in determining whether emotional shock is "fairly contemporaneous" with the injury or accident, the Michigan Court of Appeals has approved the following rule:

> In determining what the term 'fairly contemporaneous' means, guidance is found in the decisions of a sister state wherein the standard has been previously applied. In *Powers v. Sissoev,* 39 Cal App 3d 865; 114 Cal Rptr 868 (1974), the Court of Appeals for California held that a mother could not recover for emotional distress which resulted in seeing her daughter some 30 to 60 minutes after the occurrence of an accident. The Court reasoned that the circumstances under which the

22

mother saw her child were not materially different from the circumstances undergone by virtually all parents whose children have been injured in accidents which the parents did not witness. In the earlier case of *Archibald v. Braverman,* 275 Cal App 2d 253; 79 Cal Rptr 723 (1964), the California Court of Appeals held that a mother who viewed her son's injuries from an explosion within moments after the allegedly negligent accident occurred had a cause of action for emotional distress and resulting physical injury in spite of the fact that she did not witness the actual incident."

*Gustafson,* 67 Mich. App. at 368, 369-70. *See also Deisler v. Lutz*, No. 252051, 2005 WL 736517, at *4 (Mich. Ct. App. Mar. 31, 2005) (plaintiff's hearing about accident ten minutes after the accident, and seeing daughter about an hour after the accident, not "fairly contemporaneous"); *DAIIE v. McMillan*, 159 Mich. App. 48, 55 (1987) (finding that defendant's injury was not fairly contemporaneous as she arrived on the accident scene one hour later and "did not see her daughter until sometime thereafter"); *Henley v. Dep't of State Highways & Transp.*, 128 Mich. App. 214, 219 (1983) (parents' learning of accident five hours later not "fairly contemporaneous"); *Bernier v. Board of Cnty. Rd. Comm'n for Ionia Cnty.*, 581 F. Supp. 71, 79 (W.D. Mich. 1983) (parent's learning of accident and her son's death two hours after accident not "fairly contemporaneous").

According to the FAC, the accident happened around 9:30 a.m. (FAC ¶ 1, PageID.351.) Plaintiffs subsequently learned, at some unidentified time after that, that Ms. Solek was no longer traveling on M-14 when they were "alerted by the

23

tracking features on their cell phones," and they immediately then traveled from Rochester Hills to the accident location at the M-14/I-275 interchange, encountered a "large" traffic back-up, and engaged in several telephone conversations before arriving at the accident location. It was not until later that evening that the Soleks were informed that Emily Solek had not survived the collision. This length of time between the accident at 9:30 a.m. and the Solek's observance of the accident scene, is not pleaded. The FAC does allege, however, that the accident events were still ongoing when the Soleks arrived, and that they saw "the burning vehicles" and "the charred and crushed remains of the Grand Cherokee Jeep," which they identified as their daughter's vehicle. (FAC ¶ 94, PageID.366.)

The Court cannot say at this time, based solely on the pleadings and "constru[ing] the complaint in the light most favorable to the plaintiff[s], accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff[s]," that the Soleks' observance of this terrible accident scene is outside the window of time such that the Soleks did not experience shock "fairly contemporaneous" with the accident. This accident was indeed tragic. The Court can appreciate that taking in the ongoing and active accident scene, with the still "burning vehicles," "smashed KB Freightliner," and "the charred and crushed remains of the Grand Cherokee Jeep they recognized as the one Emily was driving,"

when the Soleks arrived upon the scene was a horrible shock. The parties are entitled to determine, through discovery, whether Plaintiffs can establish that the Soleks were "present at the time of the accident *or* suffer[ed] shock 'fairly contemporaneous' with the accident." *Wargelin*, 149 Mich. App. at 81 (emphasis added).

### 2.    Whether the Soleks suffered actual physical harm

Defendants also argue that Plaintiffs also fail to sufficiently plead the second prong of their negligent infliction of emotional distress claim – that the Soleks suffered shock from witnessing the event that resulted in actual physical harm. (Defs.' Mot. at pp. 17-19, PageID.909-11.) Plaintiffs plead that they "both suffered actual physical harm as a consequence of the shock they experienced at the accident scene. Both have suffered and are suffering from severe traumatic depressive reaction and mental anguish, have withdrawn from normal forms of socialization, have altered sleep patterns, headaches, and other manifestations of shock and mental anguish from witnessing the immediate aftermath of their child's death." (FAC ¶ 99, PageID.367.)

Defendants rely on *York v. Big Ten Ribs, Inc.*, No. 270592, 2006 WL 3040646 (Mich. Ct. App. Oct. 26, 2006) in support of their argument. In *York*, parents and grandparents of a minor child observed the child traumatically fall into an open

commercial septic tank and become completely submerged in sewage. *Id.* at *1. The child's mother alleged that she suffered from "nervousness, sleep deprivation (due to bad dreams), fatigue (from sleep deprivation), nightmares, and an inability to perform household chores (due to sleep deprivation) after witnessing the accident," and the boy's father suffered from "sleep deprivation and fatigue ... [and] feeling stress when he thought about his son's accident[.]" *Id.* The boy's grandmother stated that "she had problems sleeping and other undefined problems ... but did not seek psychiatric or psychological help or request medication." *Id.* at *2. The Michigan Court of Appeals held, on a motion for summary disposition, that neither the boy's parents nor his grandparents could establish a claim for negligent infliction of emotional distress, even if they experienced "shock from witnessing their son's accident," because they could not establish the actual physical harm element necessary to establish a claim for negligent infliction of emotional distress. *Id.*

However, in *Nawrocki v. City of Dearborn Heights*, No. 04-CV-74869-DT, 2005 WL 3556203 (E.D. Mich. Dec. 29, 2005), the court found that the plaintiff proffered sufficient evidence of "actual physical harm" to satisfy the second prong of her negligent infliction of emotional distress claim when she presented evidence that she "suffered a bout of depression as a result of the death of her son, developed ulcers, and experienced a heart condition." *Id.* at *9. And in *Fisher v. Lindauer*, 904

26

F. Supp. 2d 750 (W.D. Mich. 2012), the court found that evidence that the plaintiff suffered from "anxiety, hyperventilation, using oxygen, losing sleep, agitation and panic," and had "sudden mood changes," "expressed homicidal ideation against staff," and showed "Anxiety, Depressed mood, Hopelessness, Impaired concentration, Manic symptoms, Sleep disturbance (decrease), [and] Thought disturbance," was sufficient to establish the second prong of the plaintiffs' negligent infliction of emotional distress claim. *Id.* at 754.

In light of *Narwocki* and *Fisher*, the Court finds, at this stage of the litigation, construing the allegations in the light most favorable to Plaintiffs, that Plaintiffs' allegations that they "have suffered and are suffering from severe traumatic depressive reaction and mental anguish, have withdrawn from normal forms of socialization, have altered sleep patterns, headaches, and other manifestations of shock and mental anguish from witnessing the immediate aftermath of their child's death," (FAC ¶ 99, PageID.367) are sufficient to allege "actual physical harm."

Accordingly, Defendants' motion to dismiss Plaintiffs' negligent infliction of emotional distress claim in Count II of their FAC, against Defendants K&B and Stewart only, is DENIED.

27

## C.    Count III – Intentional Infliction of Emotional Distress

Plaintiffs assert a claim for intentional infliction of emotional distress against Defendants Brock and Kory Ackerman only. (FAC, Count III, PageID.367-68.) To establish a claim for intentional infliction of emotional distress under Michigan law, a plaintiff must establish "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Houston of Providence*, 458 F. Supp. 3d at 641 (citing *Lucas v. Awaad*, 299 Mich. App. 345 (2013)). "The threshold for showing extreme and outrageous conduct is high." *In re Estate of Bandemer*, No. 293033, 2010 WL 3984653, at *3 (Mich. Ct. App. Oct. 12, 2010). A plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 212 Mich. App. 73, 91 (1995); *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985) (the test for common law intentional infliction of emotional distress is "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"); *see also Graham v. Ford*, 237 Mich. App. 670, 674 (1999) ("It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even

28

that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."). "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Haley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577 (2004).

Defendants argue that Plaintiffs fail to state a claim for intentional infliction of emotional distress because they have not pleaded that Defendants Brock and Kory Ackerman's conduct was outrageous, or that the Ackerman Defendants had the requisite intent. (Defs.' Mot. at pp. 19-24, PageID.911-16.) Plaintiffs respond that consideration of this claim is "premature" as no discovery has been conducted, but that they have nevertheless sufficiently pleaded a claim of intentional infliction of emotional distress against the Ackerman Defendants. (Pls.' Resp. at pp. 24-25, PageID.1211-12.)

Plaintiffs allege in their FAC that:

103. At all relevant times, Defendants Brock Ackerman and Kory Ackerman intentionally or recklessly failed to avoid extreme and outrageous conduct by: choosing to put vehicles on the road without FCAM even after making the choice to begin equipping some of their trucks with that life-saving technology; allowing their newer, less experienced drivers to operate their older, more dangerous vehicles rather than placing those vehicles under the control of more experienced and trusted operators; routinely disregarding their driver's federally mandated off-duty time; creating a system of sanctions and

> penalties that had the direct effect of encouraging their drivers to extend their hours beyond what was reasonable or permissible; … failing to protect the public from the foreseeable and catastrophic collisions that would occur by intentionally underinsuring the corporate entity; and other violations of common law, and Federal, State and local statutes, regulations and ordinances.

(FAC ¶ 103, PageID.367-68.)

First, this alleged conduct – whether and when to equip vehicles with safety equipment, hiring, assigning, and scheduling drivers, etc. – is the conduct of Defendant K&B, as a company, and not Brock and Kory Ackerman, individually. Second, while Plaintiffs raise issues regarding Defendant K&B's business practices and decisions, construing all allegations in Plaintiffs' favor, the alleged conduct complained of fails as a matter of law to constitute extreme and outrageous conduct or a specific intent on Brock and Kory Ackerman's part to inflict the alleged injury of emotional distress on Plaintiffs. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (holding that the plaintiff's allegations that police officers denied her insulin which resulted in her being hospitalized and treated for diabetic ketoacidosis the next day were insufficient to sustain a claim of intentional infliction of emotional distress, noting "Garretson has not offered proof that the officers *intended* to subject her to emotional distress by specifically denying her medical treatment") (emphasis in original); *Taylor v. Blue Cross and Blue Shield of*

*Michigan,* 205 Mich. App. 644, 646-48, 657 (1994) (refusing to conclude that the defendant's conduct was outrageous even though the defendant's conduct of erroneously refusing to pay for the plaintiff's chemotherapy treatments resulted in delayed treatments which caused the plaintiff's cancer to spread throughout her body); *Meek v. Michigan Bell Tel. Co,* 193 Mich. App. 340, 346-47 (1992) (holding that severe verbal abuse, including ethnic slurs, at work does not constitute outrageous conduct.); *Duran,* 200 Mich. App. at 630 (holding that the conduct of the Detroit News in publicizing the plaintiffs' location after death threats were made against the plaintiffs was not sufficiently outrageous or extreme, and the trial court did not err in granting summary disposition); *compare Miller v. Currie*, 50 F.3d 373, 378 (6th Cir. 1995) (reversing dismissal of plaintiff's intentional infliction of emotional distress claim against nursing home that "intentionally and maliciously hid" her mother from her on visits, and on one occasion caused her to be arrested when she came to visit her mother); *Mroz v. Lee*, 5 F.3d 1016, 1019-20 (6th Cir. 1993) (intentional infliction of emotional distress claim lies where "defendant deliberately misinformed plaintiff's business associates that plaintiff engaged in criminal behavior, deliberately used this misinformation to manipulate the legal and financial system to plaintiff's great detriment, and personally threatened the safety of plaintiff and plaintiff's family").

Further, while it is undeniable that the accident in this case was horrific, as Defendants explain, "it is the [defendants'] conduct, rather than the consequences of the conduct, that must be 'extreme and outrageous," for a plaintiff's action to succeed." *Hesse v. Chippewa Valley Sch.*, No. 244153, 2004 WL 1161416, at *2 (Mich. Ct. App. May 25, 2004). In *Hesse*, the plaintiffs' 16-year-old son was killed in an explosion at the defendant's auto repair shop. *Id*. at *1. The court, affirming the rejection of the plaintiffs' intentional infliction of emotional distress claim, determined that the defendant's alleged failure to send the plaintiffs' son home on time, failure to adequately train employees regarding workplace safety, and failure to adhere to requirements of the son's school-sponsored work study program, could not "reasonably be regarded as so reckless that any reasonable person would know emotional distress would result." *Id*. at *8.

Similarly, in this case, Brock and Kory Ackerman's, as owners of K&B Transportation, "failure to avoid extreme and outrageous conduct" by allegedly deciding, for example, whether and when to equip vehicles with safety equipment, scheduling drivers, and assigning vehicles to drivers, cannot be regarded as extreme and outrageous individual conduct.

Defendants also argue that Plaintiffs fail to allege the requisite intent for their intentional infliction of emotional distress claim because they allege that the

Ackerman Defendants "intentionally or recklessly *failed to avoid* extreme and outrageous conduct …." (Defs.' Mot. at pp. 23-24, PageID.915-16.) Defendants contend that Plaintiffs fail to allege that the Ackerman Defendants *intended* to "inflict the injury of emotional distress on Plaintiffs" as required by Michigan law. (*Id.*, citing *Graham*, 237 Mich. App. 670). In *Graham*, the court found that plaintiffs failed to satisfy the "intent" requirement because they did not demonstrate "a specific intent on Ford's part to inflict the alleged injury of emotional distress on plaintiffs." *Graham*, 237 Mich. App. at 675. Defendants point out that the Ackerman Defendants did not know the Solek Plaintiffs prior to the accident, and thus could not have any intent toward them. Plaintiffs respond that the Ackerman Defendants at least "recklessly inflicted emotional distress with their profit-driven scheme, meeting this element." (Pls.' Resp. at p. 25, PageID.1212.) The Court agrees with Defendants and finds that, in addition to Plaintiffs' failure to sufficiently plead extreme and outrageous conduct, that they fail to sufficiently plead that Brock and Kory Ackerman individually intentionally or recklessly caused severe emotional distress to the Plaintiffs.

The Court therefore dismisses Plaintiffs' intentional infliction of emotional distress claim with prejudice.

33

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 30).

Specifically, Defendants' motion is **GRANTED** as to Plaintiffs' negligence claim against Defendants Brock and Kory Ackerman, individually, in Count I, and that claim against the Ackerman Defendants is **DISMISSED WITHOUT PREJDUCE**. However, Plaintiffs' negligence claim in Count I shall proceed against Defendants K&B Transportation, Inc. and Johnny Stewart.

Defendants' motion is **GRANTED** with respect to Plaintiffs' negligent infliction of emotional distress claim in Count II against Defendants Brock and Kory Ackerman <u>only</u>, but is otherwise **DENIED** with respect to the negligent infliction of emotional distress claim in Count II against Defendants K&B Transportation, Inc. and Johnny Stewart.

Finally, Defendants' motion is **GRANTED** with respect to Plaintiffs' intentional infliction of emotional distress claim in Count III, and that claim is **DISMISSED WITH PREJUDICE**.

34

To sum, Plaintiffs may proceed with their negligence and negligent infliction of emotional distress claims in Counts I and II of their FAC against Defendants K&B Transportation, Inc. and Johnny Stewart.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 21, 2021