UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY SOLEK, PERSONAL
REPRESENTATIVE OF THE
ESTATE OF EMILY VICTORIA
SOLEK, *et al*.,

                    Plaintiffs,

v.

K&B TRANSPORTATION, INC.,
AN IOWA CORPORATION, *et
al*.,

                    Defendants.

_____/

Case No.: 21-10442

Paul D. Borman
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL (ECF No. 56) AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL (ECF No. 72)

## I. PROCEDURAL HISTORY

Plaintiffs Amy Solek, personal representative of the Estate of Emily Solek, Deceased, Amy Solek, and Brent Solek ("Plaintiffs") filed this wrongful death suit against K&B Transportation, Inc. ("K&B"), Johnny Stewart, and Western Livestock Express, Inc. (ECF Nos. 1, 21, 64). Plaintiffs moved to compel Defendants' responses to their requests for production of documents. (ECF No. 56). To which Defendants responded (ECF No. 58) and Plaintiffs replied (ECF No. 59). This motion was referred to the undersigned. (ECF No. 62). Defendants moved to compel Plaintiffs' responses to Defendants' interrogatories, requests for

production of documents, and admissions.  (ECF No. 72).  Plaintiffs responded

(ECF No. 79) and Defendants replied (ECF No. 80).  This motion was also referred

to the undersigned.  (ECF No. 74).

The parties appeared for a motion hearing.  Counsel for Plaintiffs and

counsel for Defendants appeared and argued on the motions to compel.  (ECF Nos.

56, 72).  The motions were taken under advisement.  This matter is fully briefed

and ready for determination.

## II.    BACKGROUND

Plaintiffs allege that Johnny Lee Stewart, a truck driver employed by

Western Livestock Express, Inc. and operating a vehicle owned by K&B rear-

ended a Jeep driven by Emily Solek at a high rate of speed, killing her.  (ECF No.

64).  Plaintiffs allege Mr. Stewart was individually negligent, and they allege

vicarious and direct theories of liability against Defendants K&B and Western

Livestock.  (*Id*.).

Plaintiffs moved to compel Defendants' responses to their requests for

production.  (ECF No. 56).  Plaintiffs argue Defendants failed to fully respond to

their requests for production of documents by relying on boilerplate discovery

objections, evasive tactics, and refusing to produce all documents requested.  (*Id.*

at PageID.1673-96).  Defendants contend their objections were specifically

tailored, Plaintiffs' requests were irrelevant, proprietary, not discoverable under

2

*Hartman* and *Melick*, and that K&B does not maintain some of the requested documents.  (ECF No. 58, PageID.1796-1813).  Plaintiffs reiterated their arguments in reply.  (ECF No. 59).

Defendants argue Plaintiffs failed to fully answer their requests for production, admissions, and interrogatories.  (ECF No. 72).  Plaintiffs contend that they appropriately answered Defendants' interrogatories and requests for admissions.  (ECF No. 79).  Plaintiffs also contend that their answers and objections to Defendants' requests were appropriate.  (*Id*.).  Defendants reaffirmed their arguments in reply.  (ECF No. 80).

## III.   ANALYSIS

### A. Legal Standards

Parties may obtain discovery of any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b).  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  Relevant evidence is evidence that makes the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401. "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and

oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co*., 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)).

    1. Interrogatories

    Under Fed. R. Civ. P. 33 an interrogatory may relate to any matter consistent with the scope of discovery under Rule 26(b). The responding party must answer within thirty days of service. Fed. R. Civ. P. 33(b)(2). Unobjectionable interrogatories must be answered separately. Fed. R. Civ. P. 33(b)(3). Objections not raised are waived. All objections must be stated with specificity. Fed. R. Civ. P. 33(b)(4).

    A "boilerplate" objection is "invariably general." *Wesley Corp. v. Zoom T.V. Prod., LLC*, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018). A boilerplate objection "'merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.'" *Id.* (quoting Jarvey, Matthew L., *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913, 914 (2013)). "Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court." *Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc*., 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) (quoting *Nissan*

4

*N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2011 WL 669352, at *2 (E.D. Mich.

Feb. 17, 2011)).

2.  Requests for Production

Respondents must produce and permit inspection of documents in the

respondent's possession, custody, or control requested in requests for production,

so long as the request falls within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a).

Boilerplate objections to requests for production are improper.  *Wesley Corp.*, 2018

WL 372700, at *4.  Objections to requests for production must "state with

specificity the grounds for objecting to the request, including the reason."  Fed. R.

Civ. P. 34(b)(2)(B).  The objection must "state whether any responsive materials

are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C).

3.  Requests for Admissions

Discovery respondents must answer a request for admission within the 26(b)

scope of discovery if it is related to facts (the application of law to fact or opinions

on either) or document authenticity.  Fed. R. Civ. P. 36(a)(1).  If an answer is not

fully admitted, the respondent must deny it with particularity or detail why the

answering party cannot truthfully admit or deny it.  Fed. R. Civ. P. 36(a)(4).  The

grounds for an objection must be stated.  A request is not objectionable only

because it presents a genuine issue for trial.  Fed. R. Civ. P. 36(a)(5)  Upon a

motion challenging the sufficiency of an answer, the court must order that an

answer be served or admitted unless it finds the objection justified.  Fed. R. Civ. P.

36 (a)(6).

    4.  Motion to Compel

Rule 37(a) allows for an order compelling discovery upon motion from the

party seeking discovery.  Fed. R. Civ. P. 37(a).  The motion must include

certification that the movant has in good faith conferred or tried to confer with the

respondent to obtain it without court action.  Fed. R. Civ. P. 37(a)(1).  A party may

compel answers and production.  Fed. R. Civ. P. 37(a)(3).  An evasive or

incomplete answer, disclosure, or response must be treated as a failure to disclose,

answer, or respond.  Fed. R. Civ. P. 37(a)(4).  Local Rule 37.1 applies Local Rule

7.1 to discovery motions.  Local Rule 7.1 requires the movant to explain "the

nature of the motion or request and its legal basis and requested by did not obtain

concurrence in the relief sought."  E.D. Mich. L.R. 7.1(a)(2)(A).  Parties agree that

they had a telephonic "meet and confer" on all outstanding discovery issues.  (ECF

No. 81, PageID.2462).

    **B. Discussion**

        **1.  Plaintiffs' Motion to Compel (ECF No. 56)**

Before the hearing, the parties met and conferred to file a joint list of

unresolved issues.  (ECF No. 81).  For Plaintiffs' motion to compel, there were

thirty-five unresolved issues relating to Plaintiffs' requests for production.  (*Id.* at

PageID.2462-70).  Plaintiffs withdrew request number five at the hearing.  The undersigned will address the outstanding discovery requests at issue.

a) Boilerplate Objections

Plaintiffs argue Defendants' boilerplate and semantic objections should be stricken and they must answer Plaintiffs' requests.  Defendants argue their objections were tailored and specific.  Almost all of Defendants' objections start by explaining "Defendants object to this request as overly broad, unduly burdensome, and not proportional to the needs of the case."  (ECF No. 56-3, PageID.1711-1734).  This alone as an objection exemplifies the "invariably general" objections that are improper. *Wesley Corp.*, 2018 WL 372700, at *4.  That said, Defendants do not object on those grounds alone.  In each objection Defendants describe what in each request is too broad, burdensome, and disproportional to the needs of the case.  For example, Defendants explain that the request for all sleep apnea screening protocols is disproportional as Plaintiffs seek "all" protocols and "any" records without limit of scope or time.  (ECF No. 56-3, PageID.1713).  The objections vary by each request, specific enough to explain Defendants' opposition to the request.  Plaintiffs' request to strike all of Defendants' objections is **DENIED**.

b) Requests Six and Seven

In request six, Plaintiffs request Stewart's medical records.  (ECF No. 56-3, PageID.1712).  In response, Defendants argue they do not have Stewart's medical records, Stewart's health is not at issue, and the information is protected by HIPAA.  Defendants need not protect Stewart's records under HIPPAA, because they are not "covered entities."  45 C.F.R. §160.103.  Stewart's "wake-sleep cycle" is at issue, as Plaintiffs allege that Defendants forcing drivers to work during off-hours impaired Stewart's sleep, contributing to the crash.  (*See* ECF Nos. 21, 64).  That said, Defendants claim they lack these records.  Thus, Plaintiffs' motion to compel request six is **DENIED AS MOOT**.

In request seven, Plaintiffs request all sleep apnea screen protocols imposed or followed, including those by Defendant Stewart.  (ECF No. 56-3, PageID.1713).  Defendants argue their internal policies and procedures are not relevant under *Melick v. William Beaumont Hosp*., 2015 WL 1739980, at *1 (Mich. Ct. App. Apr. 16, 2015) and *Hartmann v. Shearson Lehman Hutton, Inc*., 194 Mich. App. 25, 28 (1992).  As discussed above, Plaintiffs allege pressure on drivers to drive during off-hours disrupted sleep and led to Stewart's dangerous driving.  Thus, whether Stewart's sleep was regulated is relevant.  This case is different from *Melick* and *Hartman* because in both cases the internal policies and procedures were not discoverable because they were irrelevant to any claim or defense.  *Melick*, 2015 WL 1739980, at *4 (internal hospital procedures irrelevant because only nurses'

8

standard of care relevant for hospital's vicarious liability); *Hartmann*, 194 Mich. App. at 28-29 (employee policies and procedures manual irrelevant to how individual employee handled account).  That said, "all" sleep policies are not relevant to Plaintiffs' claim.  Policies in place at the time of the crash are relevant to Plaintiffs' claim.  So Plaintiffs' motion to compel response to request seven is **GRANTED IN PART**.  Defendants are **COMPELLED** to answer request seven by providing any sleep policies in place in the forty-five days before the crash.

   c)  Request Eight

     In request eight, Plaintiffs seek a list of all vehicles driven by Mr. Stewart. (ECF No. 56-3, PageID.1713).  Plaintiffs argue this is relevant to their claim that K&B equipped drivers with older vehicles that lacked necessary safety features. (ECF No. 64, PageID.2044).  Defendants contend what trucks Mr. Stewart operated before the accident are irrelevant and they do not keep a list of vehicles driven by Mr. Stewart.  Plaintiffs' request is relevant to their claim that K&B was negligent by giving drivers outdated vehicles without the necessary safety features. (ECF No. 64, PageID.2047).  Information on the trucks Mr. Stewart was given may show that K&B provided drivers like Mr. Stewart outdated vehicles.  The types of vehicles Mr. Stewart drove in the forty-five days before the crash is relevant.  Defendants should be able to provide a list of the vehicles driven by Mr. Stewart during this period.  Thus, Plaintiffs' motion to compel response to request

eight is **GRANTED IN PART**.   Defendants are **COMPELLED** to produce a list

of vehicles driven by Mr. Stewart in the forty-five days before the crash.

   d)  Requests Nine and Ten

      In requests nine and ten, Plaintiffs request all computer data from any

vehicles driven by Mr. Stewart while working for K&B.  (ECF No. 56-3,

PageID.1713-14).  Defendants claim they already provided one hundred twenty-

five pages of responsive documents and that anything outstanding is irrelevant.

Computer data from K&B vehicles driven by Mr. Stewart may show his driving

hours and whether the vehicles assigned to Mr. Stewart were outdated.  This could

support Plaintiffs' claims that Defendants encouraged excessive driving and

assigned drivers like Mr. Stewart outdated vehicles.  Data from vehicles Mr.

Stewart drove in the forty-five days before the crash is relevant.  Thus, Plaintiffs'

motion to compel responses to requests nine and ten is **GRANTED IN PART.**

Since Defendants provided some responsive records, they are **COMPELLED** to

produce any outstanding vehicle computer data from Stewart's vehicles for the

forty-five days before the accident.

   e)  Requests Eleven, Twelve, and Thirteen

      In requests eleven, twelve, and thirteen, Plaintiffs seek all GPS data and

messages from any vehicle driven by Mr. Stewart.  (*Id.* at PageID.1714-15).

Plaintiffs argue they need information beyond the week of the accident to prove

K&B encouraged drivers to drive too many hours which led to the crash. Defendants claim they already provided responsive documents for the week of the accident and any other request is irrelevant.  Mr. Stewart's excessive driving in the months before the crash may have led to his alleged negligent driving in the crash. Thus, the data in the forty-five days before the crash is relevant to Plaintiffs' claims.  Since Defendants' already provided data for the week of the crash (ECF No. 81, PageID.2463-64), Plaintiffs' motion to compel responses to requests eleven, twelve, and thirteen is **GRANTED IN PART**.  Defendants are **COMPELLED** to provide the GPS data and messages for the remaining thirty-eight days before the crash.

f) Request Fourteen

In request fourteen, Plaintiffs request paperwork scanned into Mr. Stewart's vehicle while operating a K&B truck.  (ECF No. 56-3, PageID.1715).  Documents scanned into the vehicle at issue are relevant to Plaintiffs' claims, as they may reveal what led to the collision.  Defendants claim the requested documents were destroyed in the crash.  With no evidence that these documents survived, the Court cannot compel production of documents that do not exist.  So, Plaintiffs' motion to compel response to request fourteen is **DENIED AS MOOT**.

g) Request Fifteen

11

In request fifteen, Plaintiffs request all of Stewart's daily driver logs while he was driving for K&B. (*Id*. at PageID.1715-16). Plaintiffs argue the logs could prove K&B's knowledge of drivers' failure to keep proper driver logs to hide excessive driving. Defendants already provided Stewart's logs for the day of the accident. (*Id.* at PageID.1716). Stewart's driving in the months before the accident is relevant as it could show whether his excessive driving before the accident contributed to his alleged negligent driving in the crash. So, Plaintiffs' motion to compel responses to request fifteen is **GRANTED IN PART.** Defendants are **COMPELLED** to provide the logs for the remaining forty-four days before the crash.

h) Request Sixteen

In request sixteen, Plaintiffs request all contact between Stewart and K&B while Stewart was in possession of a K&B vehicle. (*Id.* at PageID.1716). Plaintiffs argue this information is relevant to showing when and how often Stewart was driving. Defendants contend that only communications on the day of the accident are relevant which Defendants already produced. Evidence that shows whether Stewart was driving excessively in the months before the crash is relevant to Plaintiffs claims. If Stewart was driving excessively in the months before the crash, this may have led to Stewart's allegedly negligent driving. So any communications about Stewart's driving hours in the forty-five days before the

crash are relevant to Plaintiffs' claims.  Thus, Plaintiffs' motion to compel

response to request sixteen is **GRANTED IN PART**.  Defendants are

**COMPELLED** to provide Stewart's communication with K&B about his driving

time in the forty-five days before the accident.

i)  Request Seventeen

In request seventeen, Plaintiffs seek all documents relating to Stewart's

possession of any K&B vehicle.  (ECF No. 56-3, PageID.1716).  Plaintiffs argue

this is relevant to the claim that Stewart was driving excessively preceding the

accident.  Defendants argue this request is too broad and they have already

provided documents relating to Stewart's trip prior to the accident.  As discussed

above, whether Stewart was driving excessively in weeks before the crash is

relevant to Plaintiffs' claims.  So, Plaintiffs' motion to compel response to request

seventeen is **GRANTED IN PART**.  Defendants are **COMPELLED** to produce

any documents, not already covered by Defendants' response to request seventeen,

about Stewart's driving time in the forty-five days before the accident.

j)  Request Eighteen

In request eighteen, Plaintiffs seek all documents showing Defendants'

authority to operate trucks in Michigan and Defendants' permit to operate under

Interstate Commerce Commission rules.  (*Id.*).  Defendants claim they already

provided these documents.  Plaintiffs admitted that they may already have the

requested documents.  Defendants explained that these documents are public record and easily accessible to Plaintiffs. Thus, Plaintiffs' motion to compel response to request eighteen is **DENIED AS MOOT**.

k)  Requests Nineteen through Twenty-Three

In requests nineteen through twenty-three, Plaintiffs seek copies of all Defendants' insurance agreements, changes to the policies, documents about applications, and internal memos on their decision to modify insurance coverage since January 2012.  (*Id.* at PageID.1717-18).  Plaintiffs contend this information is relevant to Plaintiffs' allegation that Defendants reduced their insurance coverage to protect their assets, leading to their negligence.  (ECF No. 64, PageID.2048).  Defendants argue Plaintiffs seek insurance documents irrelevant to Plaintiffs' claims and they provided their insurance agreement to Plaintiffs.  (ECF No. 56-3, PageID.1717-18).  Defendants already produced the insurance policy in place at the time of the accident.  Any insurance agreement predating this is irrelevant to Plaintiffs' claims, absent a showing that insurance coverage changes led to company-wide practices governing Stewart's driving during the accident.  Thus, Plaintiffs' motion to compel responses to requests nineteen through twenty-three is **DENIED WITHOUT PREJUDICE**.

l)  Requests Twenty-Four and Twenty-Five

14

In requests twenty-four and twenty-five, Plaintiffs request all Federal Motor Carrier Safety Administration ("FMCSA"), Department of Transportation ("DOT"), and state agency reviews of K&B and related documents.  Plaintiffs seek all DOT and agency reviews for the five years before the collision.  (*Id.* at PageID.1718-19).  Plaintiffs contend this information is relevant and not privileged.  Defendants find Plaintiffs' requests overly broad and irrelevant to Plaintiffs' claims.  Plaintiffs allege Defendants negligently permitted drivers like Stewart to negligently drive.  (ECF No. 64, PageID.2056-57, ¶ 83).  Some information contained within the review or audits may prove Defendants knew about Stewart's allegedly negligent driving practices like speeding, driving in hazardous conditions, or driving sleep-deprived before the crash.  So, Plaintiffs' motion to compel responses to requests twenty-four and twenty-five is **GRANTED IN PART**.  Defendants are **COMPELLED** to produce FMCSA, DOT, state agency review documents about Stewart's allegedly negligent driving practices in the year of the crash.

m) Requests Twenty-Six Through Twenty-Nine

In requests twenty-six through twenty-nine, Plaintiffs seek copies of all manuals in effect at the time of the collision, all training and safety materials provided to Stewart, K&B's driver handbook, and safety manual.  (ECF No. 56-3, PageID.1719-20).  Plaintiffs argue this information is relevant and unprivileged.

Defendants argue their internal policies and procedures are irrelevant and not discoverable under *Melick*, 2015 WL 1739980, at *1 and *Hartmann*, 194 Mich. App. 25.  Plaintiffs' requests are unlike those in *Melick* and *Hartman* because they seek internal policies relevant to one of their claims.  *Melick*, 2015 WL 1739980, at *4; *Hartmann*,194 Mich. App. at 29.  Plaintiffs allege Defendants negligently failed to properly hire, train, and supervise drivers, including Mr. Stewart.  (ECF No. 64, PageID.2055, ¶ 83).  Stewart's training materials may prove whether Stewart's training and oversight was deficient at the time of the accident.  So, Plaintiffs' motion to compel responses is **GRANTED IN PART**.  Defendants are **COMPELLED** to respond to requests twenty-six through twenty-nine and provide manuals, training, safety materials, and the driver handbooks used at the time of the collision.

n) Request Thirty

In request thirty, Plaintiffs seek all internal policies for assigning trucks to drivers.  (ECF No. 56-3, PageID.1721).  Plaintiffs argue this information is relevant and unprivileged.  Defendants argue their internal policies and procedures are irrelevant and not discoverable under *Melick*, 2015 WL 1739980, at *1 and *Hartmann*, 194 Mich. App. 25.  Like requests twenty-six through twenty-nine, request thirty is relevant to one of Plaintiffs' claims.  Plaintiffs allege Defendants negligently assigned older vehicles to less experienced drivers, leading to

collisions like Stewart's.  (ECF No. 64, PageID.2056, ¶ 83).  This internal policy

may show whether Defendants were careless in assigning outdated vehicles to

inexperienced drivers as Plaintiffs allege.  So, Plaintiffs' motion to compel

response to request thirty is **GRANTED IN PART**.  Defendants are

**COMPELLED** to provide Plaintiffs the policy in place for assigning trucks to

drivers at the time of the collision.

o)  Requests Thirty-One and Thirty-Two

In request thirty-one, Plaintiffs seek the safety policies effective on the day

of the accident.  In request thirty-two, Plaintiffs seek training materials provided to

the dispatchers, including the dispatcher assigned to Mr. Stewart on the trip at

issue.  (ECF No. 56-3, PageID.1721).  These requests would already be satisfied

by Defendants' responses to requests twenty-six through twenty-nine, as

Defendants must provide safety materials effective at the time of the accident.  So,

Plaintiffs' motion to compel response to requests thirty-one and thirty-two is

**DENIED AS MOOT**.

p)  Request Thirty-Three

In request thirty-three, Plaintiffs seek all communication "macros" used by

dispatchers to communicate with drivers while they are on the road.  Plaintiffs

argue this is relevant and unprivileged.  Defendants argue this request is irrelevant

to Plaintiffs' claims, undiscoverable by *Melick* and *Hartmann*, and that Defendants

do not keep such a record.  Without evidence that Defendants keep the requested records, the Court cannot compel production of documents that do not exist.  So, Plaintiffs' motion to compel response to request thirty-three is **DENIED AS MOOT.**

q) Requests Thirty-Four Through Thirty-Eight

In requests thirty-four through thirty-eight, Plaintiffs seek all driver safety data, driver disciplinary reports in the five years before the crash, and all accident and driver audit logs.  (ECF No. 56-3, PageID.1722-24).  Plaintiffs argue this information is relevant to their claims and unprivileged.  Defendants contend this information is irrelevant and undiscoverable under *Hartmann* and *Melick*.  They also argue that accident logs are not discoverable under Fed. R. Evid. 404, 49 U.S.C. §504(f), and *Sajda v. Brewton*, 265 F.R.D. 334, 341 (N.D. Ind. 2009).  Defendants also contend that driver audit logs are barred by Fed. R. Evid. 403 and 404.

Information within the scope of discovery need not be admissible in evidence to be discoverable.  Fed. R. Civ. P. 26.  Even if the accident logs and driver audit logs are inadmissible at trial under Fed. R. Evid. 403 and 404, they may still be discoverable.  That said, under 49 U.S.C. § 504(f), DOT Accident Register reports are protected by statutory privilege.  *Sajda v. Brewton*, 265 F.R.D. 334, 341 (N.D. Ind. 2009) (denying motion to compel accident report because

18

information protected by statutory privilege).  So plaintiff's motion to compel
response to request thirty-seven is **DENIED**.

Requests thirty-four, thirty-five, thirty-six, and thirty-eight ask for driver
safety data, lists of unsafe K&B drivers, driver discipline reports, and driver audit
logs.  (ECF No. 56-3, PageID.1722-24).  These documents may reveal Defendants'
previous knowledge of Mr. Stewart's allegedly unsafe driving practices, relevant to
Plaintiffs' negligent entrustment claims against Defendants.  Thus, Plaintiffs'
motion to compel responses to requests thirty-four, thirty-five, thirty-six, and
thirty-eight are **GRANTED IN PART**.  Defendants are **COMPELLED** to
produce any driver safety data, discipline report, unsafe driver list, or driver audit
log that mentions Mr. Stewart's unsafe driving the year of the accident.

r) Requests Thirty-Nine and Forty

In requests thirty-nine and forty, Plaintiffs seek K&B's organizational chart
and a list identifying all Ackerman family member employees.  (ECF No. 56-3,
PageID.1724).  Plaintiffs contend their requests are relevant to their claims and
unprivileged.  Defendants argue both documents are not maintained by K&B,
irrelevant, and undiscoverable by *Hartmann* and *Melick*.  Plaintiffs allege
Defendants negligently failed to properly train and supervise drivers like Mr.
Stewart.  (ECF No. 64, PageID.2055, ¶ 83).  A list of the chain of command above
Mr. Stewart could identify who trained and supervised him.  So, Plaintiffs' motion

to compel response to request thirty-nine is **GRANTED IN PART**.  Defendants
are **COMPELLED** to provide a list of the chain of command directly above Mr.
Stewart.

Plaintiff's request for the list of Ackerman Family members employed by
K&B may be relevant.  Though the Court dismissed the Ackerman Defendants
from this case (ECF No. 40, PageID.1373), some Ackermans may be employees
who trained or supervised Mr. Stewart.  That said, if there were members of the
Ackerman family who trained or supervised Mr. Stewart, they may already be in
request thirty-nine's production.  So Plaintiffs' motion to compel response to
request forty is **DENIED AS MOOT**.

s)  Request Forty-One

In request forty-one, Plaintiffs seek any documents about Defendants'
consideration of using Forward Collision Accident and Mitigation ("FCAM")
technology.  (ECF No. 56-3, PageID.1725).  Plaintiffs argue this is relevant to their
claims as this technology is designed to prevent accidents like the one at issue.
Defendants contend this information is irrelevant to Plaintiffs' claims.  Plaintiffs
allege that Defendants were negligent by failing to give drivers vehicles with this
technology, leading to the collision with Mr. Stewart.  (ECF No. 64, PageID.2056,
¶ 83).  Any document that discusses whether K&B would assign a FCAM vehicle
to Mr. Stewart would support Plaintiffs' claim.  Thus, Plaintiffs' motion to compel

20

request forty-one is **GRANTED IN PART**.  Defendants are **COMPELLED** to produce any document discussing whether to assign Mr. Stewart a vehicle with FCAM technology in the year of the accident.

t) Request Forty-Two

In request forty-two, Plaintiffs seek all "Omnitracs" driver communication data from vehicles.  (ECF No. 56-3, PageID.1725).  Plaintiffs argue this is relevant and unprivileged.  Defendants contend they already produced all driver communication data and any documents in Stewart's vehicle were destroyed in the collision.  Driver communication data from Stewart's vehicle before the accident is relevant to Plaintiffs' claims, as it may provide evidence of Stewart's alleged negligent driving.  Without evidence that there are any remaining records to be produced, the Court cannot compel production of documents that do not exist.  So, Plaintiffs' motion to compel response to request forty-two is **DENIED AS MOOT**.

u) Request Forty-Three

In request forty-three, Plaintiffs seek a list of all training videos used for drivers and dispatchers.  (ECF No. 56-3, PageID.1725).  Plaintiffs argue this is relevant to their claims and unprivileged.  In response, Defendants argue Plaintiffs' request is irrelevant, as Plaintiffs seek information unrelated to their remaining claims and undiscoverable under *Hartmann* and *Melick*.  Plaintiffs allege

Defendants negligently failed to properly hire, train, and supervise drivers,

including Mr. Stewart.  (ECF No. 64, PageID.2055, ¶ 83).  Stewart's training

materials may prove whether Stewart's training and oversight was deficient at the

time of the accident.  Training videos provided to Mr. Stewart at the time of the

accident are relevant to Plaintiffs' claims.  That said, in requests twenty-six

through twenty-nine, Plaintiffs request training and safety materials given to Mr.

Stewart.  The undersigned compelled Defendants to produce Stewart's training

materials at the time of the accident.  So, request forty-three will be answered by

Defendants' response to requests twenty-six through twenty-nine.  Thus, Plaintiffs'

motion to compel response to request forty-three is **DENIED AS MOOT**.

   v) Request Forty-Four

      In request forty-four, Plaintiffs seek all documents relating to the purchase

of a NetJets membership by K&B Transportation, including use of the jets by the

Ackerman family.  (ECF No. 56-3, PageID.1726).  Plaintiffs argue this supports

their allegation that K&B leaders misappropriated K&B's operating costs.  (ECF

No. 64, PageID.2048, ¶ 41).  Defendants contend this request is irrelevant to any of

Plaintiffs' remaining claims, as Brock and Kory Ackerman have been dismissed as

individual defendants in this case.  There is no clear nexus between Stewart's

allegedly negligent driving and private jet use.  This request is particularly

irrelevant to Plaintiffs' claims considering the Court's dismissal of the Ackerman

Defendants from this case.  (ECF No. 40, PageID.1373).  Without a showing that private jet use led to company-wide practices governing Stewart's driving during the accident, Plaintiffs' request is irrelevant.  Thus, Plaintiffs' motion to compel response to request forty-four is **DENIED WITHOUT PREJUDICE**.

 w) Request Forty-Seven

  In request forty-seven, Plaintiffs seek any rental or lien agreements for the truck involved in the collision on the day of the accident.  (ECF No. 56-3, PageID.1727).  Plaintiffs argue this is relevant and unprivileged.  Defendants contend this information is irrelevant to Plaintiff's remaining claims.  K&B also explained that K&B owned the vehicle involved in the crash, so there is no rental agreement.  Without evidence that there is a rental agreement, the Court cannot compel production of documents that do not exist.  So, Plaintiffs' motion to compel any rental agreement in response to request forty-seven is **DENIED AS MOOT**.

  None of Plaintiffs allegations or claims regard lien agreements on vehicles.  Without a showing that lien agreements on trucks led to Stewart's allegedly negligent driving, Plaintiffs' request is irrelevant.  Thus, Plaintiffs' motion to compel lien agreements in response to request forty-seven is **DENIED WITHOUT PREJUDICE**.

 x)  Requests Forty-Eight and Forty-Nine

In requests forty-eight and forty-nine, Plaintiffs request tracking data and vehicle inspection reports from Mr. Stewart's vehicle in the sixty days before the collision. (ECF No. 56-3, PageID.1727). Defendants claim they already produced responsive documents for the week of the accident. Since Plaintiffs allege that Defendants were negligent in monitoring Mr. Stewart and his vehicle, any tracking reports, or vehicle inspection reports could reveal Defendants' prior knowledge of any deficiencies. So, Plaintiffs' motion to compel responses to requests forty-eight and forty-nine is **GRANTED IN PART**. Defendants have already provided tracking data and vehicle inspection reports from Mr. Stewart's vehicle for the week of the accident. Thus, Defendants are **COMPELLED** to provide the same data for the remaining thirty-eight days before the week of the accident.

y) Requests Fifty Through Fifty-Two

In requests fifty through fifty-two, Plaintiffs seek all documents about Mr. Stewart's load for the trip at issue, including contracts, messages between Mr. Stewart and other parties, and documents relating to Mr. Stewart's possession of the vehicle. (ECF No. 56-3, PageID.1728). Plaintiffs contend this information is relevant and unprivileged. Defendants claim they already provided relevant responsive documents and the load is irrelevant. Plaintiffs allege that company policies requiring on-time morning deliveries for "critical customers," like Walmart on the trip at issue, led to distracted nighttime driving. (ECF No. 64,

PageID.2046, ¶¶ 22-26; *Id.* at PageID.2055-57, ¶ 83).  Evidence that Mr. Stewart

was carrying a load for a critical customer scheduled for morning delivery could

support Plaintiffs' claims that Defendants' policies led to Mr. Stewart's negligent

driving on the trip at issue.  Plaintiff's motion to compel response to requests fifty

through fifty-two is **GRANTED IN PART**.  Defendants are **COMPELLED** to

produce load documents, and messages between Mr. Stewart and Defendants,

about "critical customers" and when deliveries were scheduled on the trip at issue.

z)  Request Fifty-Three

In request fifty-three, Plaintiffs seek all call-in reports, documents,

recordings, and "accident call records" related to the collision at issue.  (ECF No.

56-3, PageID.1729).  Plaintiffs argue these records are relevant and unprivileged.

Call-in reports, documents, recordings, and "accident call records" are relevant to

proving the accident at issue.  Even so, Defendants contend they have already

provided relevant documents, including photographs, video and audio recordings,

all call-in reports, and "accident call records" for the accident.  The Court cannot

compel additional records that do not exist.  Thus, Plaintiffs' motion to compel

responses to request fifty-three is **DENIED AS MOOT**.

aa) Request Fifty-Four

In request fifty-four, Plaintiffs seek witness statements about the collision.

(ECF No. 56-3, PageID.1729).  Defendants contend they already produced all

witness statements in their possession, which Plaintiffs have access to via the Michigan State Police.  If Defendants have provided all witness statements in their possession, the Court cannot compel records that do not exist.  Thus, Plaintiffs' motion to compel responses to request fifty-four is **DENIED AS MOOT**.

bb) Request Fifty-Five

In request fifty-five, Plaintiffs seek correspondence with Defendants' insurance carrier about the collision.  (ECF No. 56-3, PageID.1729).  Plaintiffs argue this information is relevant and unprivileged.  Defendants argue the requested documents are irrelevant, inadmissible under Fed. R. Evid. 411, and protected by "attorney-client privilege and/or the attorney work product doctrine." (*Id.* at PageID.1729-30).  Correspondence with Defendants' insurance carrier about Mr. Stewart's allegedly negligent driving is relevant to Plaintiffs' claims.  The correspondence may prove prior knowledge of Stewart's allegedly negligent driving and support Plaintiffs' negligent entrustment and training claims.  Thus, correspondence between Defendants and their insurance carrier about Mr. Stewart's negligent driving during the accident is relevant.  That said, Plaintiffs are not entitled to these documents if they are privileged.  Fed. R. Civ. P. 26(b).  Defendants have not provided a privilege log and do not specify which privilege they assert, and which documents are withheld based on that privilege as required by Fed. R. Civ. P. 26(b)(5)(A).  So, Plaintiffs' motion to compel response to

request fifty-five is **HELD IN ABEYANCE**. Defendants are **COMPELLED** to produce a privilege log for the responsive documents for request fifty-five in accordance with Fed. R. Civ. P. 26(b)(5)(A) within **TWO WEEKS** of this Order. If, after receipt of the privilege log, a dispute still exists as to these records, the parties are directed to contact Chambers to schedule a telephonic status conference on the issue.

cc) Requests Fifty-Six and Fifty-Seven

In requests fifty-six and fifty-seven, Plaintiffs ask for copies of all accident reports, photos, videos, and models of the collision. (ECF No. 56-3, PageID.1730). Plaintiffs argue this information is relevant and unprivileged. Defendants claim they already produced accident reports, photos, videos, and audio recordings. If Defendants have provided all accident reports, photos, videos, and renderings of the collision in their possession, the Court cannot compel them to provide records that do not exist. Thus, Plaintiffs' motion to compel responses to request fifty-six and fifty-seven is **DENIED AS MOOT**.

dd) Request Fifty-Eight

In request fifty-eight, Plaintiffs ask for all insurance claim forms filed for the load lost through the crash. (ECF No. 56-3, PageID.1731). Plaintiffs claim this is relevant and unprivileged. Defendants contend this request is irrelevant to Plaintiff's remaining claims. Plaintiffs do not allege any liability based on any

insurance claims made for the load destroyed in the crash.  Request fifty-eight is

irrelevant.  So, Plaintiffs' motion to compel response to request fifty-eight is

**DENIED WITHOUT PREJUDICE**.

ee) Requests Fifty-Nine and Sixty

In requests fifty-nine and sixty, Plaintiffs seek federal and state

investigations of the collision.  Plaintiffs claim this information is relevant and

unprivileged.  Defendants contend they produced all responsive documents in their

possession.  If Defendants have provided all accident reports in their possession,

the Court cannot compel them to provide records that do not exist.  Thus,

Plaintiffs' motion to compel responses to request fifty-nine and sixty is **DENIED**

**AS MOOT**.

ff) Requests Sixty-One Through Sixty-Eight

In requests sixty-one through sixty-eight, Plaintiffs seek documents about

Defendants' affirmative defenses.  (ECF No. 56-3, PageID.1731-34).  Plaintiffs

claim this information is relevant and unprivileged.  Defendants contend they have

produced all documents in their possession and control and will supplement

throughout discovery.  If Defendants have provided all documents in their

possession, the Court cannot compel them to provide records that do not exist.

Thus, Plaintiffs' motion to compel responses to requests sixty-one through sixty-

eight is **DENIED AS MOOT**.

## 2.  Defendants' Motion to Compel (ECF No. 72)

Before the hearing, the parties met and conferred to file a joint list of

unresolved issues.  (ECF No. 81).  For Defendants' motion to compel, there were

ten unresolved issues relating to Plaintiffs' requests for admissions, interrogatories,

and requests for production.  (*Id.* at PageID.2470-75).  Requests for Production

Fourteen through Sixteen, Eighteen, and Nineteen were resolved by protective

order.[1]  Request for production fifty-two was resolved by Plaintiffs' production.

The undersigned will address the outstanding discovery requests by each

corresponding unresolved issue.

### a)  Requests for Admission Eight and Nine

In requests for admission eight and nine, K&B asks for Brent and Amy

Solek to admit that they did not discover the crash through telephone "tracking

features" and could only tell Emily Solek's cellular telephone stopped moving.

"Tracking features" are defined as they are "identified in paragraph 89 of

Plaintiff's First Amended Complaint."  (ECF No. 72-2, PageID.2180-81).

Plaintiffs did not admit or deny request eight because Plaintiffs used the tracking

features as only one element to discover the crash.  Plaintiffs objected because

---

[1] Defendants' counsel indicated that this matter was resolved by protective order.  Plaintiffs'
counsel noted that they did not produce records for Brent Solek, as Plaintiffs made no wage
claim for Brent Solek.  Since Defendants indicated their requests were resolved, the undersigned
deems this matter resolved.

"determine" is vague.  (*Id*. at PageID.2180).  They denied request nine by referencing their answer to request eight.  (*Id.* at PageID.2181).

If an answer is not fully admitted, the respondent must "*specifically deny it or state in detail* why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(4) (emphasis added).  Plaintiffs explain they cannot admit or deny request eight because Plaintiffs used more than their "tracking features" to discover the collision, including their iPad and on-scene observations.  They denied request nine for the same reason.  (ECF No. 72-2, PageID.2180-81).  Plaintiffs specifically detailed why they could not admit or deny request eight and denied request nine.  Using the tracking features was just one way the Soleks discovered the collision, they did not rely on it alone.  (*Id*.).  Plaintiffs' responses were sufficiently detailed.  Thus, Defendants' motion to compel responses to requests for admission eight and nine is **DENIED WITHOUT PREJUDICE**.

b)  Request for Admission Twenty-Three

In request twenty-three, Defendants ask Plaintiffs to admit that the amount of liability insurance obtained by K&B for the vehicle involved in the collision exceeded the amount required by 49 CFR § 387.9.  Plaintiffs could not admit or deny because the "information is not unavailable to Plaintiffs."  (ECF No. 72-2, PageID.2187).  A respondent may claim lack of knowledge to admit or deny a request, "*only if* the party states that it has made reasonable inquiry and that the

30

information it knows or can readily obtain is insufficient to enable it to admit or

deny." Fed. R. Civ. P. 36(a)(4) (emphasis added). Plaintiffs detail no inquiry into

this information as required. Defendants' motion to compel response to request for

admission twenty-three is **GRANTED**. Plaintiffs are **COMPELLED** to serve an

amended answer to request for admission twenty-three on Defendants.

c) Interrogatory Two

In interrogatory two, Defendants ask the Estate of Emily Solek to identify

any physical or mental ailments she suffered in the ten years before the collision.

(ECF No. 72-3, PageID.2192). Plaintiff responded by saying "Emily was healthy

and did not suffer from any mental or physical ailments, conditions, or diseases in

the 10 years prior to the accident." (ECF No. 79, PageID.2435). K&B revealed

they would accept this answer as responsive only if Plaintiffs agreed to sign

requested authorizations for K&B to confirm their answer. (ECF No. 80,

PageID.2456). Plaintiffs are willing to produce the records with irrelevant

information and non-discoverable information redacted and produce a privilege log

to identify what they redacted. Plaintiffs have not provided a privilege log and do

not specify which privileges they claim, and which documents are privileged as

required by Fed. R. Civ. P. 26(b)(5)(A). So, Defendants' motion to compel

response to interrogatory two is **HELD IN ABEYANCE**. Plaintiffs are

**COMPELLED** to produce a privilege log for the responsive documents in

accordance with Fed. R. Civ. P. 26(b)(5)(A) within **TWO WEEKS** of this Order.

If, after receipt of the privilege log, a dispute still exists as to these records, the

parties are directed to contact Chambers to schedule a telephonic status conference

regarding the issue.

d) Interrogatory Eleven

In interrogatory eleven to the Estate, Defendants direct Plaintiffs to describe

whether Emily Solek was providing any financial support to anyone, or if she was

being financially supported.  Defendants also want the name of supporters,

amount, and frequency of financial support.  Plaintiff answered that Emily Solek

was not financially supporting anyone and Brent and Amy Solek provided "some"

financial support to Emily.  (ECF No. 72-3, PageID.2198).  Plaintiffs argued it

would be nearly impossible to itemize every single dollar Brent and Amy spent to

support their daughter and exact amounts are irrelevant.  (ECF No. 79,

PageID.2435).  Defendants argue Plaintiffs should answer by providing more

information than just "some financial support."  (ECF No. 81, PageID.2472).

Though the Soleks may be unable to itemize all financial support they gave

their daughter, "an evasive or incomplete … answer, or response must be treated as

a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37 (a)(4).  The Soleks

can and should be able to provide more details than offering that they provided

their daughter "some" financial support.  They could generally detail what they

paid for like clothing, food, or education, and how long they financed those things. Thus, Defendants' motion to compel response to interrogatory eleven is **GRANTED IN PART**. Plaintiffs are **COMPELLED** to answer interrogatory eleven by generally detailing what they financed for Emily Solek and how long they financed those costs.

    e) Interrogatory Seven and Requests for Production Forty-Seven and Forty-Eight

        In interrogatory seven and requests for production Forty-Seven and Forty-Eight, Defendants ask Brent and Amy Solek to identify their health information for the preceding ten years and provide appropriate authorizations for their health records. (ECF No. 72-4, PageID.2207; ECF No. 72-5, PageID.2217; ECF No. 72-6, PageID.2248). Plaintiffs produced the requested records for Amy Solek and are still waiting on records for Brent Solek. Plaintiffs will produce once they collect all the records. Thus, Defendants' motion to compel response to interrogatory seven and requests for production forty-seven and forty-eight is **DENIED AS MOOT**.

    f) Requests for Production Twenty-Four through Twenty-Seven

        In requests for production twenty-four through twenty-seven, Defendants seek Brent and Amy Solek's cellular telephones used from January 1, 2019 until present and all cloud data. (ECF No. 72-6, PageID.2237-38). Defendants argue

this information is relevant to Plaintiffs' negligent infliction of emotional distress claims.  Plaintiffs argue that only cloud data from the week of and the week following the collision is relevant.

Plaintiffs' cellular telephone data is relevant to establishing how they discovered Emily Solek's death.  It can also provide context on their relationship with Emily Solek.  Data from the cloud may also show their mental anguish in informing others of her death, and grief following the collision.  All this information could support their negligent infliction of emotional distress claims, which describe mental anguish they suffered during the investigation and aftermath of the collision.  (ECF No. 64, PageID.2059-60).  So, Defendants' motion to compel responses to requests for production twenty-four through twenty-seven is **GRANTED IN PART**.  Plaintiffs are **COMPELLED** to provide messages between the Solek family in the forty-five days before the collision.  Plaintiffs **MUST** also provide cloud data from the day of the collision, including messages, photos, and location data about the collision.  Plaintiffs **MUST ALSO** provide cloud data in the forty-five days following the collision including messages, telephone calls, and photographs about their discovery of her death, informing family of her death, and any mental anguish they suffered following the collision.

g) Requests for Production Twenty-Nine through Thirty-two and Thirty-Seven

In requests for production twenty-nine through thirty-two and thirty-seven, Defendants seek all text messages sent or received on the day of the collision, and Solek family text messages dating to January 1, 2019.  (ECF No. 72-6, PageID.2239-41;2243).  Plaintiffs contend Emily Solek's messages were destroyed with her cellular telephone during the collision, and that Plaintiffs' produced Brent and Amy Solek's messages for the day of the collision and the day following.  This data can be produced through Plaintiffs' production in response to requests twenty-four through twenty-seven.  The cloud data from Plaintiffs' devices should produce Defendants' messages on the day of the collision, as well as messages between the Solek family preceding the collision.  Thus, Defendants' motion to compel response to requests twenty-nine through thirty-two and thirty-seven is **DENIED AS MOOT.**

h)  Requests for Production Sixty-Five, Sixty-Six, Seventy, and Seventy-Nine

In requests sixty-five, sixty-six, and seventy, Defendants request documents Plaintiffs used to support allegations in their First Amended Complaint.  (ECF No. 72-6, PageID.2253-55).  Plaintiffs promised to produce the responsive documents once received, as "discovery is ongoing."  (*Id.*).  This information supports Plaintiffs' allegations against Defendants, so it is relevant to their claims.  Respondents must produce and permit inspection of documents in the respondent's possession, custody, or control requested in requests for production, so long as the

35

request falls within Rule 26(b).  Fed. R. Civ. P. 34 (a).  If Plaintiffs have these documents, they must produce them.  So, Plaintiff's motion to compel responses to requests for production sixty-five, sixty-six, and seventy is **GRANTED**.  Plaintiffs are **COMPELLED** to produce documents responsive to requests sixty-five, sixty-six, and seventy in their possession.

In request seventy-nine, Defendants seek each document produced from a third-party about this lawsuit in Plaintiff's possession.  (ECF No. 72-6, PageID.2257).  Plaintiffs objected based on the work-product privilege.  Plaintiffs failed to produce a privilege log.  So, Defendants' motion to compel response to request for production seventy-nine is **HELD IN ABEYANCE**.  Plaintiffs are **COMPELLED** to produce a privilege log for the responsive documents for request seventy-nine in accordance with Fed. R. Civ. P. 26(b)(5)(A) within **TWO WEEKS** of this Order.  If, after receipt of the privilege log, a dispute still exists as to these records, the parties are directed to contact Chambers to schedule a telephonic status conference regarding the issue.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel (ECF No. 56) is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion to compel (ECF No. 72) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.


Date: July 27, 2022                          s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge